**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

PHIL KERPEN, *et al.*

                        Plaintiffs,

     v.

METROPOLITAN WASHINGTON
AIRPORTS AUTHORITY, *et al.*

                       Defendants.[1]

Case No. 1:16-cv-01307-JCC-TCB

<u>**REPLY MEMORANDUM IN SUPPORT OF**</u>
<u>**FEDERAL DEFENDANTS' MOTION TO DISMISS**</u>

---

[1] Elaine Chao, Secretary of Transportation, has been substituted for Anthony Foxx as the defendant in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

    I.     MWAA is not a federal entity exercising federal authority.................................... 2

          A.     Congressional approval of the MWAA Compact is not an assertion of
                control over the resulting entity ................................................................ 3

          B.     Unlike the former Board of Review, MWAA's Board of Directors
                is not a federal entity exercising federal authority..................................... 4

          C.     The Lease transfers federal property, not federal authority, to
                MWAA ...................................................................................................... 6

    II.    Because MWAA does not exercise federal power, Plaintiffs' constitutional
          challenges fail ........................................................................................................ 8

    III.   Plaintiffs' Guarantee Clause challenge has no merit ............................................ 10

    IV.   The MWAA Compact is valid ............................................................................. 11

          A.     The District had authority to enter into the MWAA Compact ................. 11

          B.     Congress had authority to approve the MWAA Compact ........................ 13

    V.    The Lease is valid ................................................................................................ 13

    VI.   Plaintiffs' Due Process claim is not properly before this Court ........................... 14

          A.     Count 6 of the Complaint does not state a Due Process claim ................. 14

          B.     This Court lacks jurisdiction to entertain an illegal exaction claim
                because the Government has not waived sovereign immunity................ 14

    VII.  Plaintiffs' APA claim is time-barred .................................................................. 17

CONCLUSION.................................................................................................................. 19

## **TABLE OF AUTHORITIES**

**CASES**

*A.E. Finley & Assoc., Inc. v. United States,*
  898 F.2d 1165 (6th Cir. 1990) ............................................................. 15

*Aerolineas Argentinas v. United States,*
  77 F.3d 1564 (Fed. Cir. 1996)............................................................. 15

*Ala. Rural Fire Ins. Co. v. Naylor,*
  530 F.2d 1221 (5th Cir. 1976) ............................................................. 16

*Am. Canoe Ass'n, Inc. v. EPA,*
  30 F. Supp. 2d 908 (E.D. Va. 1998) .................................................... 18

*Am. Sci. Eng'g., Inc. v. Califano,*
  571 F.2d 58 (1st Cir. 1978)................................................................... 16

*Bowen v. Massachusetts,*
  487 U.S. 879 (1988).................................................................... 15, 16

*Broadlands, LLC,*
  713 F.3d 175 (4th Cir. 2013) ............................................................... 17

*Buckstaff Bath House Co. v. McKinley,*
  308 U.S. 358 (1939)............................................................................... 7

*Consol. Edison Co. of N.Y. v. U.S. Dep't of Energy,*
  247 F.3d 1378 (Fed. Cir. 2001)............................................................ 15

*Corr v. Metro. Wash. Airports Auth.,*
  702 F.3d 1334 (Fed. Cir. 2012)................................................. 6, 14, 15

*Cuyler v. Adams,*
  449 U.S. 433 (1981)......................................................................... 4, 13

*Davis Mountains Trans-Pecos Heritage Ass'n v. Fed. Aviation Admin.,*
  116 F. App'x 3 (5th Cir. 2004) ............................................................ 18

*Dep't of Transp. v. Ass'n of Am. R.Rs.,*
  135 S. Ct. 1225 (2015)........................................................................... 2

*Hawkins v. Freeman,*
  195 F.3d 732 (4th Cir. 1999) ............................................................... 14

*Hechinger v. Metro. Wash. Airports Auth.*,
   36 F.3d 97 (D.C. Cir. 1994) ................................................................................. 5, 6

*In re Bluewater Network*,
   234 F.3d 1305 (D.C. Cir. 2000) ............................................................................... 18

*In re United Mine Workers of Am. Int'l Union*,
   190 F.3d 545 (D.C. Cir. 1999) ................................................................................. 18

*Johnson v. City of Shelby*,
   135 S. Ct. 346 (2014) ............................................................................................... 17

*Key v. Doyle*,
   434 U.S. 59 (1977) .................................................................................................... 12

*Kleppe v. New Mexico*,
   426 U.S. 529 (1976) .................................................................................................. 13

*Lake Tahoe Country Estates, Inc. v. Tahoe Reg'l Planning Agency*,
   440 U.S. 391 (1979) .................................................................................................... 3

*Lebron v. Nat'l R.R. Passenger Corp.*,
   513 U.S. 374 (1995) ............................................................................................. 2, 6, 8

*Marshall Leasing, Inc. v. United States*,
   893 F.2d 1096 (9th Cir. 1990) ................................................................................. 16

*Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise*,
   501 U.S. 252 (1991) ............................................................................................. 5, 6, 8

*Rogers v. Ink*,
   766 F.2d 430 (10th Cir. 1985) ................................................................................. 16

*Seattle Master Builders Ass'n v. Pac. Nw. Elec. Power & Conservation Planning Council*,
   786 F.2d 1359 (9th Cir. 1986) ................................................................................... 4

*United States v. City & Cty. of San Francisco*,
   310 U.S. 16 (1940) .................................................................................................... 13

*United States v. Simmons*,
   247 F.3d 118 (4th Cir. 2001) ..................................................................................... 4

*Virginia v. Tennessee*,
   148 U.S. 503 (1893) .................................................................................................. 13

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ............................................................................. 9, 10

*Wilderness Society v. Norton*,
   434 F.3d 584 (D.C. Cir. 2006) ............................................................. 18

*Yakus v. United States*,
   321 U.S. 414 (1944) ............................................................................. 9

## CONSTITUTIONS

U.S. Const. art. I ...................................................................................... 11, 12, 13

U.S. Const. art. IV .................................................................................... 7, 12, 13

## STATUTES

5 U.S.C. § 702 .......................................................................................... 14

5 U.S.C. § 706 .......................................................................................... 17, 18

28 U.S.C. § 1346(a) .................................................................................. 15

28 U.S.C. § 1491(a)(1) .............................................................................. 15

28 U.S.C § 2401(a) ................................................................................... 17, 18

49 U.S.C. §§ 49101-49112 ....................................................................... 3

49 U.S.C. § 49104 .................................................................................... 7, 9, 19

49 U.S.C. §§ 49106 .................................................................................. 3, 7

Pub. L. No. 87-328 ................................................................................... 11

D.C. Code § 1-203.02 ............................................................................... 11, 12

D.C. Code §§ 9-902 .................................................................................. 3

Va. Code §§ 5.1-153 ................................................................................. 3

Fed. R. Civ. P. 19 ..................................................................................... 19

## LEGISLATIVE MATERIAL

132 Cong. Rec. 32,143 (1986) (statement of Rep. Hammerschmidt) ........... 5

# INTRODUCTION

Plaintiffs open their memorandum in opposition by invoking the specter of an unaccountable entity, unique in our constitutional history, unlawfully collecting money from one group of citizens to benefit another. The Metropolitan Washington Airports Authority ("MWAA") is no such boogeyman. As Federal Defendants' opening memorandum makes plain, MWAA is a properly constituted interstate compact entity, exercising delegated state authority to operate Reagan National Airport, Dulles International Airport, and the Dulles Access Highway ("the Airports") pursuant to a lease with the Department of Transportation ("the Lease") and subject to the supervision of a Board of Directors whose members are appointed by politically accountable actors: the Governors of Virginia and Maryland, the Mayor of the District of Columbia, and the President of the United States.

To contest their obligation to pay tolls on the Dulles Toll Road, Plaintiffs, a putative class of commuters and air travelers, bring a host of statutory and constitutional claims in this latest of several unsuccessful suits challenging MWAA's revenue-generating activities. Each of these many theories fails as a matter of law. Plaintiffs' Article I, Article II, and Guarantee Clause challenges (Counts 3, 4 and 5) must be dismissed because, as Federal Defendants' opening memorandum shows, MWAA is not a federal entity exercising federal power. Arguments to the contrary in Plaintiffs' opposition misapprehend the role of Congress under the Compact Clause, exaggerate federal control over the MWAA Board of Directors, and confuse the Lease with a delegation of federal authority. Plaintiffs' objections to the compact that created MWAA (Counts 1 and 2) are similarly flawed: their strained interpretations of the District of Columbia's (the "District's") Home Rule Act and of the Compact Clause fail to rebut Federal Defendants' showing that the MWAA Compact is a valid exercise of the District's authority and congressional power.  Finally, Plaintiffs' Due Process Clause and

Administrative Procedure Act challenges fare no better, as this Court lacks jurisdiction to entertain the claims (Counts 6 and 10).

Plaintiffs are not able to translate their breathless assertions of a compact entity gone rogue into claims upon which relief can be granted. This is so because MWAA is a valid interstate compact entity whose relationship to the Federal Defendants is constitutionally proper.  For the reasons articulated in Federal Defendants' opening memorandum and those stated below, Federal Defendants respectfully request that the Court grant their Motion to Dismiss.

## ARGUMENT

### I.     MWAA is not a federal entity exercising federal authority.

Federal Defendants demonstrated in their opening memorandum, Mem. in Supp. Federal Defs.' Mot. to Dismiss and Opp'n to Pls.' Mot. for Partial Summ. J. ("Fed. Mem.") 12–24, ECF No. 88, that Plaintiffs' claims premised on the exercise of federal power—Counts 3, 4, and 5—must fail: MWAA exercises authority delegated by Virginia and the District of Columbia, not the Federal Government, and it possesses none of the features that the Supreme Court identified as characteristic of a federal instrumentality for Constitutional purposes. *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 399 (1995); *see also Dep't of Transp. v. Ass'n of Am. R.Rs.*, 135 S. Ct. 1225, 1233 (2015).

Plaintiffs have not rebutted Federal Defendants' showing.  Plaintiffs' argument that MWAA is a federal instrumentality rests on three errors. First, Plaintiffs equate congressional approval of an interstate agreement under the Compact Clause with federal control over the resulting entity. Second, Plaintiffs elide the crucial distinction between MWAA's former Board of Review and its present-day Board of Directors. Third, Plaintiffs confuse the Federal Government's role as a landlord with a delegation of legislative power under Article I of the Constitution.

**A.    Congressional approval of the MWAA Compact is not an assertion of control over the resulting entity.**

Federal Defendants have established that, as an interstate compact entity, MWAA draws its power from the state authorities that created it, and not from the Metropolitan Washington Airports Act ("Transfer Act"), 49 U.S.C. §§ 49101–49112, that federalized the agreement. *See* Fed. Mem. 12–19; *Lake Tahoe Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 398–400 (1979).  Plaintiffs' argument to the contrary misapprehends Congress's role in approving an interstate compact.

Virginia and the District created MWAA in 1985 by adopting reciprocal legislation, *see* Va. Code §§ 5.1-153 *et seq.*; D.C. Code §§ 9-902 *et seq.* The following year, finding that the "limited" federal interest in the Airports could be preserved "through a lease mechanism which provides for local control and operation," Congress passed the Transfer Act to approve the MWAA Compact and to transfer control of the Airports to MWAA. 49 U.S.C.  § 49101(3), (5), (7), (10). Plaintiffs take issue with the proposition that in passing the Transfer Act Congress lent its consent to an *existing* state-created entity. Reply Mem. in Supp. Pls.' Mot. for Partial Summ. J. and in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp. Mem.") 5, ECF No. 103. They contend instead that the Transfer Act "*expressly* empowered [MWAA] to operate and 'improve' Dulles and Reagan . . ., to issue bonds, acquire property, exercise eminent domain, and 'levy fees and other charges.'" *Id.* (citing 49 U.S.C. §§ 49106(b)(A)–(E)); *see also* Pls.' Opp. Mem. 10, 14, 17. But this is not so. The Transfer Act described MWAA's powers as listed, but noted that these "powers and jurisdiction" were "conferred upon it jointly by the legislative authority of Virginia and the District of Columbia." 49 U.S.C. § 49106(a)(1)(A).

Contrary to Plaintiffs' suggestion, the fact that Virginia and the District created MWAA does not render Congress's subsequent statutory authorization meaningless. Congressional approval of an interstate agreement is, in fact, the central mechanism for

protecting the federal interest under the Compact Clause. "By vesting in Congress the power to grant or withhold consent, or to condition consent on the States' compliance with specified conditions, the Framers sought to ensure that Congress would maintain ultimate supervisory power over *cooperative state action* that might otherwise interfere with the full and free exercise of federal authority." *Cuyler v. Adams*, 449 U.S. 433, 439–490 (1981) (emphasis added). Congress's approval does not create the compact entity. *Seattle Master Builders Ass'n v. Pac. Nw. Elec. Power & Conservation Planning Council*, 786 F.2d 1359, 1365 (9th Cir. 1986) ("As with any compact, congressional consent did not result in the creation [of the compact entity.]"). The Transfer Act, enacted one year after the Virginia and District legislation that created MWAA, approved the agreement and gave the compact the status of federal law, nothing more.

## B. Unlike the former Board of Review, MWAA's Board of Directors is not a federal entity exercising federal authority.

As a preliminary matter, contrary to Plaintiffs' memorandum in opposition at 4, neither MWAA nor Federal Defendants have made assertions in prior litigation that contradict our present position: MWAA's Board of Directors is not a federal entity exercising federal power. Even if they had, the Government could not be estopped by such prior representations: estoppel is rarely, if ever, a valid defense against the Government and in any event requires proof of affirmative misconduct. *See* Fed. Mem. 13; *accord United States v. Simmons*, 247 F.3d 118, 124 (4th Cir. 2001) (judicial estoppel applies only when a party's opposite position in a prior proceeding has been accepted by the court and that party has "intentionally misled the court to gain unfair advantage"). Plaintiffs here cannot make such a showing.

And on the merits, Plaintiffs cannot establish that MWAA exercises federal authority.  As Federal Defendants' opening brief makes plain, MWAA is not under federal control: MWAA receives federal grants on the same terms as all other airport operators, and the level of federal representation on its Board is insubstantial. Fed. Mem.

12–19. Plaintiffs' attempt to argue otherwise draws unwarranted parallels between MWAA's Board of Directors and its defunct Board of Review. *See, e.g.*, Pls.' Opp. Mem. 4, 5, 7, 9, 17 (citing to *Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise*, 501 U.S. 252, 268 (1991) ("*CAAN*"), to support assertions about the Board of Directors' characteristics). But the two are meaningfully different. Only three of MWAA's seventeen Directors are federally appointed; the remaining fourteen are designated by the Governors of Virginia and Maryland and the Mayor of the District of Columbia. 49 U.S.C. § 49601. In contrast, the Board of Review—comprised of only federal officers and vested with the power to veto many of the Board of Directors' significant decisions—was established to prevent Congress from "losing control" over the Airports "to a local authority." *CAAN*, 501 U.S. at 268 (quoting 132 Cong. Rec. 32,143 (1986) (statement of Rep. Hammerschmidt)). It was precisely because the Board of Directors is *not* subject to federal control that Congress previously sought to exert oversight via the Board of Review. *See id.* (citing legislative history).

The Board of Directors shares none of the features that compelled the *CAAN* court to invalidate the Board of Review. *See id.* at 266 ("Congress placed such significance on the Board [of Review] that it required that the Board's invalidation prevent MWAA from taking any action that would have been subject to Board oversight."); *id.* (noting "the structure and the powers" of the Board of Review were "mandated in detail" by Congress); *id.* at 266–67 ("Most significant, membership on the Board of Review is limited to federal officials, specifically members of congressional committees charged with authority over air transportation."); *see also Hechinger v. Metro. Wash. Airports Auth.*, 36 F.3d 97, 99 (D.C. Cir. 1994) (holding the restructured Board of Review—still heavily comprised of members of Congress—was unconstitutional where, "[w]hile [Congress] eliminated the Board's veto authority, they expanded its other powers in a number of significant ways"). Indeed, *CAAN* gave no indication that MWAA's Board of Directors might itself present constitutional problems. To the contrary, the Court stated

repeatedly that MWAA is an independent local authority exercising powers conferred by local jurisdictions. *See, e.g.*, *CAAN*, 501 U.S. at 257, 276.

Plaintiffs discount the fact that only three out of seventeen members of MWAA's Board of Directors are appointed by the President, arguing this "does not undermine the reality that MWAA is a federal entity." Pls.' Opp. Mem. 9 n.4. But federal control over an entity's leadership is a key factor in analyzing whether it is a federal instrumentality. *Lebron*, 513 U.S. at 398; *accord Corr v. Metro. Wash. Airports Auth.*, 702 F.3d 1334, 1337 (Fed. Cir. 2012) ("*Corr I*") (presidential appointment of only three of seventeen Board members "is insufficient to establish MWAA as a federal instrumentality").

Finally, Plaintiffs point to congressional restructuring of the Board of Review after *CAAN* and *Hechinger* as indicative of the Federal Government's persistent involvement in MWAA's leadership. Pls.' Opp. Mem. 5. Yet these changes to the Transfer Act were not directed at managing MWAA's operations. Rather, they were necessary to modify or remove the Board of Review following judicial invalidation, *see CAAN*, 501 U.S. at 276; *Hechinger*, 36 F.3d at 99, and had the net result of *reducing* federal participation in MWAA's governance.

Plaintiffs have offered nothing to undermine what Federal Defendants' opening memorandum makes clear: MWAA is a local authority independent from the Federal Government, and not subject to federal control.

**C.     The Lease transfers federal property, not federal authority, to MWAA.**

Plaintiffs' third proposed source of MWAA's federal authority—the federal government's ownership of the Airports—fares no better. *See* Pls.' Opp. Mem. 7–8. Despite admitting that "entities do not become agents of the Federal Government simply by leasing federal land for their own use," *id.* 8, at several points in their memorandum, Plaintiffs rely on the fact of federal ownership over the Airports to advance the argument that MWAA exercises federal power. *See, e.g., id.* 4, 7, 9–10, 14, 16. First, Plaintiffs

assert that "MWAA's powers and purposes are inherently federal in origin" because the Constitution vests in Congress the power to make "Rules and Regulations respecting the Territory or other Property belonging to the United States," U.S. Const. art. IV, § 3, cl. 2. Pls.' Opp. Mem. 7. But in this case, the only action pursuant to the Property Clause has been Congress's authorization of the Lease, 49 U.S.C. § 49104. There has been no delegation of Property Clause power to MWAA: as Federal Defendants' opening memorandum establishes, at 16, a government lease's grant of authority to use federal property is not a grant of federal authority. *See Buckstaff Bath House Co. v. McKinley*, 308 U.S. 358, 362–63 (1939). The Lease controls the terms of MWAA's tenancy on federal property. It is not a delegation of the property power; it is a valid congressional exercise of that power vis-à-vis a non-federal entity.

Second, Plaintiffs are wrong to assert that unlike all other airport operators, which levy fees pursuant to state and local law, MWAA exercises federal taxing authority. Pls.' Opp. Mem. 17. They contend without explanation that ownership of the land should imply "ultimate control" over the entity levying the fees, *id.*, and indeed it does not. In this case, the entity levies fees, tolls, and charges pursuant to Virginia and District law. 49 U.S.C. § 49106(a)(1).  The Secretary's proper transfer of control over federal land to MWAA results in MWAA's exercise of state and local authority over the Airports.

Plaintiffs raise a similar argument regarding the Secretary's appointment of an Inspector General to examine MWAA's procurement practices: they contend that the Federal Government "continues to exercise general oversight over MWAA." Pls.' Opp. Mem. 5–6. Such review by the Inspector General, however, was due to the Department of Transportation's role as the lessor. *See* Letter from Ray LaHood to Michael A. Curto, July 31, 2012, http://www.metwashairports.com/sites/default/files/archive/mwaa.com/file/LaHood.Curto_7.31.12.pdf ("As you know, I am responsible for protecting the Federal interests in the airport that you operate under a lease with DOT."). They hardly

7

indicate that MWAA or its Board of Directors is "under the direction and control of federal governmental appointees," *Lebron*, 513 U.S. at 398.

Properly viewed, MWAA exercises state and local authority on federal property, and not federal power.  None of Plaintiffs' three theories of federal authority undermines Federal Defendants' showing that MWAA is not a federal entity for constitutional purposes. *See* Fed. Mem. 12–24.

## II.      Because MWAA does not exercise federal power, Plaintiffs' constitutional challenges fail.

Federal Defendants' opening memorandum demonstrates that Plaintiffs' claims pursuant to the Appointments Clause in Article II (Count 4) and the taxing power and non-delegation doctrine derived from Article I (Count 5) must be dismissed because they hinge on "the premise that MWAA exercises federal power." Mem. in Supp. Pls.' Mot. for Summ. J. ("Pls.' Mem.") 8, ECF No. 47; s*ee* Fed. Mem. 19–23. Plaintiffs have failed to offer a rebuttal, as their arguments in support of Counts 4 and 5 rest on the three errors addressed in Part I, *supra*.

In insisting that MWAA's Board of Directors is subject to the requirements of the Appointments Clause, Plaintiffs again conflate MWAA's Board of Directors with the now-defunct Board of Review, *see, e.g.*, Pls.' Opp. Mem. 10–11 (relying on *CAAN*, 501 U.S. at 266–67), confuse the government's role as a landlord with a delegation of federal power, *see id.* at 9–10 (advancing an argument under the Property Clause), and rely on MWAA's assertions in previous litigation, which do not bind the Government, *see id.* at 9; *supra* Part I. Count 4 therefore should be dismissed.

In support of their Taxing Power claim, Plaintiffs stress that the tolls are collected on federal property. Pls.' Opp. Mem. 16. But again, this confuses the Government's role as a lessor with a delegation of federal authority. Plaintiffs' hypothetical in which the Secretary of Transportation collects tolls, *id.*, is not to the contrary: of course the Secretary would act pursuant to federal law if she were to collect tolls on a federally

controlled toll road, but this would be due to the authority that comes with *her federal office* and not to the location of the toll booth. In contrast, toll workers operating under MWAA's grant of authority can only use MWAA's state and local power to generate revenue and not the Federal Government's, for they are not federal employees. Here, Congress has only consented to the MWAA Compact and transferred property interests pursuant to the Lease. As explained in Part I, *supra*, neither of these actions is a delegation. MWAA's revenue-generating activities are not pursuant to federal authority, Fed. Mem. 20–23, and thus Plaintiffs' Taxing Power claim should be dismissed.

Finally, Plaintiffs insist that the Transfer Act and the Lease violate the non-delegation doctrine. Pls.' Opp. Mem. 21–23. When conferring decision-making authority, Congress must "lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001) (quotation omitted). Federal Defendants' opening memorandum shows that, even assuming the non-delegation doctrine applies to the Secretary's limited authority as a lessor, the Transfer Act easily satisfies this standard. Fed. Mem. 21–22.

Contrary to Plaintiffs' assertion, Federal Defendants do indeed deny that the "airport purposes" provision of the Act lacks an intelligible principle, Pls.' Opp. Mem. 21. The phrase is defined by statute to include "aviation or business activities," "activities necessary or appropriate to serve passengers or cargo in air commerce," "nonprofit, public use facilities that are not inconsistent with the needs of aviation," and "a business or activity not inconsistent with the needs of aviation that has been approved by the Secretary." 49 U.S.C. § 49104(a)(2)(A). This definition lends greater specificity to the Transfer Act than is found even in statutes that have withstood non-delegation objections, *see* Fed. Mem. 22 (citing, *inter alia*, *Yakus v. United States*, 321 U.S. 414, 420, 423–36 (1944) (rejecting non-delegation challenge to statute authorizing administrator to "fix[] prices of commodities which 'in his judgment will be generally fair and equitable and will effectuate the purposes of th[e] Act'")). As illustrated in Federal Defendants'

opening memorandum at 34–37, which demonstrates that MWAA's actions are not inconsistent with "airport purposes," the phrase and its statutory definition provide a meaningful standard against which to measure the Secretary's actions. *Cf. Whitman*, 531 U.S. at 474 (an intelligible principle provides "guidance for the exercise of discretion"). Plaintiffs' attempt to read the narrow statutory definition of "airport purposes" out of the text of the Act cannot succeed. The Secretary has an intelligible principle to guide her administration of the Lease. Count 5 should be dismissed.

### III.    Plaintiffs' Guarantee Clause challenge has no merit.

Federal Defendants' opening memorandum shows that even assuming the Guarantee Clause provides a cause of action, Count 3's challenge to MWAA under that provision fails: no court has ever held that a compact entity's diffuse political accountability is constitutionally suspect. Fed. Mem. 23–24. Plaintiffs now maintain that they did not intend to raise solely a Guarantee Clause claim. Pls.' Opp. Mem. 3.

If Count 3 is not a Guarantee Clause claim, then it fails to allege a justiciable cause of action. Plaintiffs assert that Congress's decision to let MWAA administer the Airports as an independent compact entity "is unconstitutional," but neither the Complaint nor Plaintiffs' two memoranda identify a provision of the Constitution that MWAA has allegedly violated. *See* Am. Class Action Compl. ("Am. Compl.") ¶¶ 114–19, ECF No. 38; Pls.' Mem. 18; Pls.' Opp. Mem. 23–24.

The only other plausible interpretation is that Count 3 asserts a violation of the Property Clause, *see* Am. Compl. ¶ 118 ("[T]he Secretary did not have the constitutional authority to transfer federal property, specifically the premises of Reagan and Dulles . . . to an entity like MWAA[.]"). This argument fails for the reasons addressed in Part V, *infra*, and in Federal Defendants' opening memorandum, at 28–29, concerning the validity of the Lease. Because it fails to state a claim, Count 3 should be dismissed.

IV.     **The MWAA Compact is valid.**

As Federal Defendants' opening brief makes plain, the District may enter into interstate agreements under authority of the Home Rule Act, Fed. Mem. 24–28, and Congress may approve them, pursuant to the Compact Clause or the Necessary and Proper Clause and the District Clause, if they concern federal interests. Fed. Mem. 24–28. The MWAA Compact, duly enacted through Virginia and District legislation and approved via the Transfer Act, is proper. Counts 1 and 2 should be dismissed.

The Court need not address Plaintiffs' incorrect contention, at 27–28, that the MWAA Compact is invalid because an interstate compact entity can never exercise federal authority—compacts in which the federal government is a participant can and do, *see, e.g.,* the Delaware River Basin Compact, Pub. L. No. 87-328, 75 Stat. 688, 689 (1961) (the United States "consents to, and joins . . . in" an intergovernmental compact creating the Delaware River Commission). Here, however, MWAA is a state creation that exercises no federal power. Plaintiffs' sweeping assertion is as irrelevant as it is wrong.

A.      **The District had authority to enter into the MWAA Compact.**

The Home Rule Act grants the District legislative power over "all rightful subjects of legislation within the District consistent with the Constitution of the United States . . . subject to all the restrictions and limitations imposed upon the states by the 10th section of the 1st article of the Constitution of the United States," which includes the Compact Clause. D.C. Code § 1-203.02; *see* Const. art. I, §10, cl. 3.[2] With no citation to authority, Plaintiffs propose a strained reading of the Home Rule Act's grant of authority, asking the Court to interpret the phrase "within the District" as a territorial limitation to suggest that the District is barred from entering into interstate agreements. Pls.' Opp. Mem. 26. This interpretation is unpersuasive. Nothing in the text compels the conclusion

---

[2] Federal Defendants have no objection to Plaintiffs' assertion that "Congress cannot constitutionally delegate to the District the powers of a state as a member of the Union," Pls.' Opp. Mem. 26. But the Home Rule Act does no such thing.

that "within" is meant to limit the District's ability to enter cooperative agreements with states. In fact, Congress could and did delegate full legislative power to the District, much like its grant of self-government to territories of the United States, subject only to the same "restrictions and limitations imposed upon the *states* by the 10th section of the 1st article of the Constitution of the United States."  D.C. Code § 1-203.02 (emphasis added).  Courts also have explained that the District of Columbia Code "is a comprehensive set of laws equivalent to those enacted by state and local governments," *Key v. Doyle*, 434 U.S. 59, 68 n.13 (1977). In sum, the Home Rule act authorizes the District to enter into interstate agreements consistent with the Constitution. The MWAA Compact is one such agreement.

Although the Home Rule Act expressly makes the Compact Clause a limitation on the District's authority, Plaintiffs would read the provision out of the statute. The text of the Constitution flatly refutes Plaintiffs' suggestion that the term "State" includes the District only in constitutional provisions designed to safeguard individual rights against state intrusion, Pls.' Opp. Mem. 25. Plaintiffs list the Commerce Clause and the Full Faith and Credit Clause as examples that fit their pattern. But both of those provisions, like the Compact Clause, also serve to delimit power among the states or between a state and the federal government. Const. art. IV, § 1 ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."); Const. art. I, § 8, cl. 3 ("[The Congress shall have Power] To regulate Commerce . . . among the several States."). The Compact Clause, listed alongside these provisions in the Home Rule Act, D.C. Code § 1-203.02, serves the same end: preserving the federal interest implicated in an interstate transaction and thus limiting the state's power to the extent the agreement intrudes on the federal interest. Plaintiffs' arguments have no merit and should be rejected.

### B.      Congress had authority to approve the MWAA Compact.

The Compact Clause vests in Congress "the power to grant or withhold consent" to "cooperative state action that might otherwise interfere with the full and free exercise of federal authority." *Cuyler*, 449 U.S. at 439–40; *accord Virginia v. Tennessee*, 148 U.S. 503, 519 (1893). The Constitution also grants Congress the power to make "all laws which shall be necessary and proper for carrying into Execution" the powers enumerated in art. I, § 8, cl. 18—which includes the District Clause. Pursuant to either of these two independent sources of constitutional authority, Congress properly could authorize the MWAA Compact. *See* Fed. Mem. 25–27.

Plaintiffs' only argument to the contrary is the assertion that Congress's power under the Necessary and Proper Clause is irrelevant. They provide no support for their contention that MWAA "must stand or fall" as a Compact Clause entity, Pls.' Opp. Mem. 27—and the argument is, in fact, wrong.  Plaintiffs have offered nothing to rebut Federal Defendants' showing that Congress could legitimately enact the Transfer Act pursuant to the powers vested in it by the Constitution. The MWAA Compact is proper, and Counts 1 and 2 should be dismissed.

### V.      The Lease is valid.

The Federal Government's transfer of the Airports to MWAA pursuant to a lease was unassailably valid pursuant to the Property Clause, *see* Fed. Mem. 28–29 (citing Const. art. IV, § 3, cl. 2). Plaintiffs' argument to the contrary is circular: the Lease is unlawful because MWAA is unlawful, and MWAA is unlawful because the Lease permits an improper exercise of federal authority. *See* Pls.' Opp. Mem. 29. Neither of these (incorrect) propositions speaks to the ultimate issue: the Federal government's "complete power" over the "public property entrusted to it," *Kleppe v. New Mexico*, 426 U.S. 529, 540 (1976) (quotation omitted). Plaintiffs cite no authority in support of their proposed restriction on Congress's exercise of its enumerated power, nor could they, *United States v. City & Cty. of San Francisco*, 310 U.S. 16, 29 (1940) ("The power over

the public land . . . entrusted to Congress is without limitations."). The Lease is therefore proper regardless of the merits of Plaintiffs' constitutional claims (Counts 1 through 5).

## VI.   Plaintiffs' Due Process claim is not properly before this Court.

At heart this suit seeks money damages, and therefore Plaintiffs face a dilemma: the APA does not waive sovereign immunity for an illegal-exaction claim, and Plaintiffs have failed to plead jurisdiction under the Little Tucker Act—likely because the Federal Circuit has already held that MWAA is not a federal instrumentality for purposes of the Little Tucker Act. *Corr I*, 702 F.3d at 1337–38. Count 6 should be dismissed.

### A.   Count 6 of the Complaint does not state a Due Process claim.

As Federal Defendants established in their opening memorandum, Fed. Mem. 37–38, Count 6 of the Complaint sounds in substantive, not procedural, due process, *contra* Pls.' Opp. Mem. 31–32. *See* Am. Compl. ¶¶ 163–68; Pls.' Mem. 22–23. Plaintiffs have failed to state a substantive due process claim: they cannot demonstrate that the Federal Government has taken *any* action resulting in a deprivation, let alone action "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," *Hawkins v. Freeman*, 195 F.3d 732, 738–39 (4th Cir. 1999). For the reasons given in the Federal Defendants' opening memorandum, the Complaint fails to state such a claim and Count 6 should be dismissed.

### B.   This Court lacks jurisdiction to entertain an illegal exaction claim because the Government has not waived sovereign immunity.

The Administrative Procedure Act ("APA") does not waive the Federal Government's sovereign immunity for a suit seeking damages, nor for a claim with an available alternative remedy. *See* 5 U.S.C. § 702 (waiving sovereign immunity for actions "seeking relief other than money damages"), § 704 (extending jurisdiction to actions that have "no other adequate remedy in a court"). Count 6, which seeks monetary relief, must

be brought, if at all, pursuant to the Tucker Act in the Court of Federal Claims, 28 U.S.C. § 1491(a)(1), or pursuant to the Little Tucker Act in federal district court, *id.* § 1346(a).[3]

Plaintiffs seek an end-run around this jurisdictional obstacle by invoking *Bowen v. Massachusetts*, 487 U.S. 879, 906–07 (1988) (using the APA waiver of sovereign immunity to entertain a claim for equitable restitution where Massachusetts sought to enforce its statutory entitlement to withhold federal Medicaid grant-in-aid money). But *Bowen* provides no path into court for Plaintiffs, for two reasons.

First, unlike in *Bowen*, if Plaintiffs here could demonstrate that MWAA is a federal instrumentality, they would have an adequate alternative remedy: a suit for money damages under the Tucker Act or the Little Tucker Act, *contra* Pls.' Opp. Mem. 36. As the Federal Circuit stated in *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573 (Fed. Cir. 1996), on which Plaintiffs rely, "an illegal exaction has occurred when 'the Government has the citizen's money in its pockets.' Suit can then be maintained under the Tucker Act to recover the money exacted." *Id.* (citations omitted); *accord Consol. Edison Co. of N.Y. v. U.S. Dep't of Energy*, 247 F.3d 1378, 1384 (Fed. Cir. 2001) ("*ConEd*") ("The Supreme Court's language and reasoning in [*Bowen*] do not preclude the Court of Federal Claims' illegal exaction doctrine from providing an adequate remedy[.]"). Courts "will not tolerate a litigant's attempt to artfully recast [a] complaint to circumvent the jurisdiction of the Court of Federal Claims." *ConEd*, 247 F.3d at 1385. As the *ConEd* court noted: "The circuits have consistently rebuffed such blatant forum shopping to avoid adequate remedies in an alternative forum." *Id.*; *see also A.E. Finley & Assoc., Inc. v. United States*, 898 F.2d 1165, 1167 (6th Cir. 1990) ("[O]ne cannot circumvent exclusive jurisdiction in the Claims Court by suing simply for declaratory or injunctive relief in a case where such relief would be the equivalent of a judgment for

---

[3] Plaintiffs have not pleaded jurisdiction pursuant to 28 U.S.C. § 1346(a), perhaps because they have already tried and failed to demonstrate that MWAA collects money on behalf of the federal government. *See Corr I*, 702 F.3d at 1337–39.

money damages."); *Marshall Leasing, Inc. v. United States*, 893 F.2d 1096, 1099 (9th Cir. 1990); *Rogers v. Ink*, 766 F.2d 430, 434 (10th Cir. 1985) ("A party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States."); *Am. Sci. & Eng'g., Inc. v. Califano*, 571 F.2d 58, 61–63 (1st Cir. 1978); *Ala. Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1225–26 (5th Cir. 1976)). The proper forum for this claim is elsewhere, and as such the APA bars this Court's consideration.

Second, this case is meaningfully different from *Bowen* and other equitable cases because the Federal Government is not unlawfully withholding property that is rightfully Plaintiffs'. In *Bowen*, the Supreme Court concluded that a suit seeking to enforce a state's statutory entitlement to reimbursement under the Medicaid grant-in-aid program was a suit for specific relief, rather than for money damages, and permitted it to proceed via the APA's waiver of sovereign immunity, 487 U.S. at 900. As the Court explained:

> The State's suit to enforce § 1396b(a) of the Medicaid Act, which provides that the Secretary "shall pay [to the State]" certain amounts for appropriate Medicaid services, is not a suit seeking money in compensation for the damage sustained by the failure of the Federal Government to pay as mandated; rather, *it is a suit seeking to enforce the statutory mandate itself*, which happens to be one for the payment of money.

*Id.* (emphasis added). *Bowen* is easily distinguishable from the present matter. Unlike in *Bowen* and its progeny, *id.*, Plaintiffs have identified no money-mandating statute that entitles Plaintiffs to the funds they seek. Moreover—and fatal to the Plaintiffs' equitable restitution theory—the tolls were not collected through federal action, *see supra* Part I, and by Plaintiffs' own admission are not in federal coffers, *see* Pls.' Opp. Mem. 14–20. Therefore, Plaintiffs cannot receive "the very thing" to which they are allegedly entitled, *Bowen*, 487 U.S. at 895. Equitable restitution is inapplicable to the facts of this case.

For these reasons, this Court lacks jurisdiction over Plaintiffs' Due Process claim, and Count 6 should be dismissed.

## VII.    Plaintiffs' APA claim is time-barred.

Federal Defendants have shown that Plaintiffs' APA claim, which is based entirely on § 706(2), is time-barred, and that Plaintiffs cannot belatedly add a new claim under § 706(1) in their brief.  Fed. Mem. 29–33. Plaintiffs implicitly concede that an unlawful-action claim under 5 U.S.C. § 706(2) based on the Secretary's 2008 certification is untimely. *See* Pls.' Opp. Mem. 44. For Count 10 to survive, therefore, Plaintiffs attempt two interpretive feats, neither of which is convincing.

First, Plaintiffs contort their Complaint to read into it a claim for unlawfully withheld action under 5 U.S.C. § 706(1). *See id.* at 43. However, the paragraph in the Complaint that Plaintiffs quote describes only the relief requested and is preceded by the assertion: "[T]he Secretary's *action* should [therefore] be held unlawful and set aside." Am. Compl. ¶ 198 (emphasis added). This paragraph offers suggestions for remedying the alleged violation of § 706(2) and not an independent claim under § 706(1). Plaintiffs are not saved by *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014) (per curiam), which counsels against "dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *id.* Plaintiffs advance no new facts or legal theories in support of a "claim asserted" in their Complaint, *see id.*; instead, they bring an entirely different cause of action. This is insufficient to defeat a motion pursuant to Rule 12(b)(6), as Federal Defendants established in their opening memorandum, at 30. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013) (holding a plaintiff cannot amend his complaint through briefing on a dispositive motion).

Second, even if Plaintiffs could add a new claim under § 706(1) through their summary judgment briefing, it, too, would be time-barred under the six-year statute of limitations, 28 U.S.C § 2401(a). As Federal Defendants' opening memorandums shows, any claim for unlawfully withheld agency action accrued when the Secretary made clear in the 2008 Certification that he would take no action against MWAA. Fed. Mem. 31;

17

*see, e.g.*, *Davis Mountains Trans-Pecos Heritage Ass'n v. Fed. Aviation Admin.*, 116 F. App'x 3, 17 (5th Cir. 2004) ("[A] claim for agency delay in supplementing NEPA documents accrues when circumstances requiring supplementation first arise. Such a view prevents plaintiffs from circumventing the limitations period by phrasing their complaints against agencies as [a] continuous delay . . . rather than a failure to act at a discrete point in time.").

Contrary to Plaintiffs' implication, Pls.' Opp. Mem. 43–44, the continuing violation doctrine would not save the claim. Courts applying this doctrine to actions under § 706(1) have done so in cases where the agency had a clearly defined, time-bound statutory obligation to act. *See, e.g.*, *In re Bluewater Network*, 234 F.3d 1305, 1316 (D.C. Cir. 2000) (noting the agency faced a "clear statutory mandate, a deadline nine-years ignored, and an agency that has admitted its continuing recalcitrance"); *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 550–51 (D.C. Cir. 1999) (petitioners sought a writ of mandamus to compel the Department of Labor to issue final regulations pursuant to statute requiring action with 90 days of specified date); *Am. Canoe Ass'n, Inc. v. EPA*, 30 F. Supp. 2d 908, 925–26 (E.D. Va. 1998) ("EPA has a nondiscretionary, mandatory duty . . . to approve or disapprove an initial CPP submitted to it by a state within 30 days"). The Secretary is under no such obligation.

There is yet another significant problem with Plaintiffs' reliance on the continuing violation doctrine: this theory applies to an APA claim only if the limitation in 28 U.S.C. § 2401(a) can be tolled. The Fourth Circuit has never held that it can. Plaintiffs' citations to dicta do not save their claim. *See* Pls.' Opp. Mem. 44–45. In *Wilderness Society v. Norton*, 434 F.3d 584, 588 (D.C. Cir. 2006), while the District of Columbia Circuit mentioned it would decline to apply 28 U.S.C. § 2401(a) to a claim to compel agency action under 5 U.S.C. § 706(1), the court ultimately held the plaintiffs lacked standing, *id.* Similarly, in *American Canoe Association, Inc. v. EPA*, 30 F. Supp. 2d 908, 925 (E.D. Va. 1998), the court dismissed "in its entirety" the plaintiffs' APA count as duplicative or

18

in the alternative as seeking review of decisions not yet made. *Id.* at 925–26. Neither case controls the outcome here.

In addition to being time-barred, Plaintiffs' APA claim is not within the jurisdiction of the Court. As explained in Federal Defendants' memorandum in opposition, at 31–33, the Transfer Act specifies a cause of action for ensuring MWAA's compliance with the Lease: "The Attorney General or an aggrieved party may bring an action on behalf of the Government." 49 U.S.C. § 49104(c). Contrary to Plaintiffs' assertion, Pls.' Opp. Mem. 45, 47, this limitation does not insulate unlawful conduct from judicial review, it channels court oversight through the appropriate mechanism. The Transfer Act provides the sole enforcement mechanism for violations of the Lease, and this Court lacks jurisdiction to review the Secretary's action under the APA.

Finally, if the APA claim were not time-barred and were otherwise within the Court's jurisdiction, it would fail on the merits for the reasons argued in Federal Defendants' memorandum in opposition, at 34–36, which Plaintiffs have failed to rebut—namely, that the Secretary's 2008 Certification was consistent with the Transfer Act and the Lease, and not otherwise contrary to law. In sum, Count 10 should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Federal Defendants respectfully request that the Court dismiss the claims against them in the Amended Complaint.[4]

---

[4] The Commonwealth of Virginia has asserted that it is an indispensable party to this suit and urged dismissal under Federal Rule of Civil Procedure 19. Virginia Br. as Amicus Curiae in Support of Dismissal, ECF No. 83-1. Federal Defendants take no position on this assertion, except to note that if a new action were brought in Virginia state court asserting federal claims against Federal Defendants, they would remove the claims to federal district court.

DATED: March 24, 2017                    Respectfully submitted,


JUDITH S. KALETA                         CHAD A. READLER
Deputy General Counsel                   Acting Assistant Attorney General
PAUL M. GEIER
Assistant General Counsel for Litigation
and Enforcement                          DANA J. BOENTE
JOY K. PARK                              United States Attorney
Senior Trial Attorney
Office of the General Counsel         By: _____/s/_____
U.S. Department of Transportation        KIMERE J. KIMBALL
Washington, D.C. 20590                   Assistant U.S. Attorney
                                         2100 Jamieson Avenue
*Of Counsel*                             Alexandria, VA  22314
                                         (703) 299-3763 (telephone)
                                         (703) 299-3983 (facsimile)
                                         Kimere.kimball@usdoj.gov

                                         JUDRY SUBAR
                                         Assistant Branch Director
                                         JEAN LIN
                                         Special Counsel
                                         EVA L. BITRAN
                                         Trial Attorney
                                         U.S. Department of Justice
                                         Civil Division, Federal Programs Branch
                                         20 Massachusetts Ave. NW
                                         Washington, D.C. 20530
                                         (202) 514-3716
                                         Jean.lin@usdoj.gov

                                         *Counsel for Federal Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2017 I electronically filed the foregoing with the

Clerk of Court using the CM/ECF System, which will send a notification of such filing (NEF) to

counsel of record for all parties.


DATED: March 24, 2017

_____/s/_____

KIMERE J. KIMBALL
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3763
Fax: (703) 299-3983
Email: Kimere.kimball@usdoj.gov
Attorney for Federal Defendants
